1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

11

12  MARTIN E. SARMIENTO,　　　　)　Case No. CV 14-02280 (AS)
　　　　　　　　　　　　　　　)
13  　　　　　　　Plaintiff,　　)　**MEMORANDUM OPINION AND**
　　　　　　　　　　　　　　　)
14  　　v.　　　　　　　　　　　)　**ORDER OF REMAND**
　　　　　　　　　　　　　　　)
15  CAROLYN W. COLVIN, Acting　　)
　　Commissioner of Social　　　)
16  Security,　　　　　　　　　　)
　　　　　　　　　　　　　　　)
17  　　　　　　　Defendant.　　　)
　　─────────────────────────)
18

19  　　　　Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED
20  that this matter is remanded for further administrative action
21  consistent with this Opinion.

22

23  　　　　　　　　　　　　　　**PROCEEDINGS**

24
25  　　　　On March 27, 2014, Plaintiff filed a Complaint seeking review of
　　the denial of his application for Disability Insurance Benefits.
26  (Docket Entry No. 3).  The parties have consented to proceed before the
27  undersigned United States Magistrate Judge.  (Docket Entry Nos. 9-10).
28  On August 12, 2014, Defendant filed an Answer along with the
　　Administrative Record ("AR"). (Docket Entry Nos. 13-14).  The parties
　　filed a Joint Position Statement ("Joint Stip.") on October 23, 2014,

setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 15).

The Court has taken this matter under submission without oral argument.  See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed March 28, 2014 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 13, 2010, Plaintiff, formerly employed as a pipefitter and a glazer for a construction company, as dock personnel for a trucking company, as a refinisher for a construction/interior design company, and a package car loader/unloader for a shipping company (see AR 47, 144-49 ), filed an application for Disability Insurance Benefits, alleging an inability to work since September 16, 2008. (AR 126-27).  On July 30, 2012, the Administrative Law Judge ("ALJ"), Cynthia Minter, heard testimony from Plaintiff, Plaintiff's father, and vocational expert Barbara Kurkowski. (See AR 39-74).  On November 9, 2012, the ALJ issued a decision denying Plaintiff's application.  The ALJ determined that Plaintiff had severe impairments -- "chronic residual multiple sprains and strains with resolved essential pelvis fracture, hernias, chronic residuals post status right shoulder surgery and sternoclavicular inflammation versus separation"[1] -- but found that Plaintiff was not disabled within the meaning of the Social Security Act.  (See AR 20-29).

Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 14).  The request was denied on February 4, 2014.  (AR 1-6).  The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g), 1383(c).

---

[1]     The ALJ found that Plaintiff did not have "severe" mental conditions.  (See AR 27).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in failing to properly: (1) assess the severity of Plaintiff's mental impairment; (2) assess Plaintiff's ability to perform the identified work; and (3) reject Plaintiff's testimony. (<u>See</u> Joint Stip. at 4-12, 15-18, 22-25, 27-29).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's third claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's third claim of error, the Court will not address Plaintiff's first and second claims of error.

**A.   The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. (<u>See</u> Joint Stip. at 23-25, 27-29). Defendant asserts that the ALJ provided valid reasons for finding Plaintiff not fully credible. (<u>See</u> Joint Stip. at 15-21).

Plaintiff made the following statements in an Exertion Questionnaire dated November 14, 2010: (1) he lives with his family in a house; (2) he has pain in his right shoulder, back, hips, legs and knees, and has lost strength in his right shoulder, arm and hand; (3) on the average day, he does stretches, feeds his dogs, showers, eats, washes his dishes, cleans and drives (if necessary), but feels pain and discomfort throughout his body after he finishes or at the end of the day; (4) he does not walk far or much because of his pain, and when he does walk he has to stop from time to time and experiences pain; (5) he climbs 3 stairs daily to get in and out of house, but his legs hurt and he feels drained; (6) he does not lift much or often because of his

hernias and the loss of strength in his shoulder, arm and hand; (7) he does not carry a lot because of the pain and discomfort; (8) he does not do his own grocery shopping; he goes to the grocery store just to buy a couple of items; (9) he makes his bed, does his laundry, dusts his floor, cleans his bathroom, and cleans his room (but it takes him about a day because he needs to stop and take breaks); (10) he drives a car, but not far or often; and when he does drive he has to stop occasionally to move around; (11) he does not do any yard work; (11) he did the above chores before he became disabled, but he can't do some of them any more; if and/or when he does them he experiences pain and discomfort; (12) he has difficulty finishing his chores because he has to take long breaks; (13) he usually sleeps 4 to 5 hours a night; (14) he requires rest periods or naps during the day, usually for half an hour; (15) he takes medication (Tramadol, Nabumetone) daily, throughout the day and night; and (16) the condition of his body is not improving.  (See AR 151-54).

At the administrative hearing, Plaintiff testified as follows:

He graduated from high school.  He last worked as a pipefitter for two and a half years.  He had to leave that job because he hurt everything except for his left shoulder (i.e., punctured lung, right shoulder, neck, back [fractured pelvis, nerve damage], chipped femur, two severed tendons, lack of feeling from his chest down to his feet) in a motorcycle accident.  (He spent a week in the hospital, and has had surgery on his right shoulder.)  Before that he worked as a glazer for 8 months, regularly lifting 10 to 80 pounds.  Before that, he worked on the docks for about 6 months, unloading and loading trucks.  Before that, he worked in construction.  Before that, he worked for UPS, lifting up to 75 pounds.  (See AR 46-53, 56).

He presently is receiving treatment for his shoulder, neck and bones, and he is seeing a psychiatrist (once every 6 weeks), a therapist (once every 2 weeks) and a doctor in sexual medicine.  He

4

had seen a hernia specialist and a neurologist for his back. A month after the accident he was told his lung had healed. He was told his pelvis would heal on its own (there was no way to put a cast on it). He had physical therapy for his right shoulder, but it was stopped because of minimal improvement. There has been discussion about another surgery, possibly in the collar bone, but there was only a 50/50 chance surgery would help. He may start doing acupuncture, and is waiting to get approval to see a pain management specialist. (See AR 53-57, 62-64, 67-68).

He is taking a pain medication and two sleeping medications. He has to take 3 or 4 pain pills to work. The medications cause him to be out of it for sometimes two days. He also takes an injection for sex (which is permanent); without it, he vomits if he does anything sexual. (See AR 57-59).

He has good and bad days. Some days the pain is not severe, and he tries to stay out of bed and do stuff around the house. Some days he does not feel like getting out of bed; on those days, he tries to get up and move around, but it is hard because of the pain or the effect of the pills. (See AR 59-60).

He was told by a doctor that the most he can lift is 8 pounds. He has pain in his right shoulder if he picks up something heavy. He can stand for about an hour before his legs and knees start to hurt. He cannot walk or sit for a long period of time due to sharp pains from his severed tendons. He can walk at one time for about a half hour. He has difficulty sitting in a chair; his back and the area between his legs begin to hurt. He can sit and watch television for about an hour. He has difficulty using his hands because of his right shoulder/arm/hand injury. It hurts him to raise a fork, and it is difficult for him to write or shake hands. He sometimes cannot raise his hand above his shoulder. (See AR 56, 60-62).

5

The ALJ found that Plaintiff had the following residual functional capacity ("RFC")[2]: lifting and carrying 10 pounds frequently and 20 pounds occasionally; no ability to lift or reach above shoulder level; sitting or standing and walking for up to 6 hours out of an 8-hour workday, but with a change of position for about at least 5 minutes after 1 hour in position; no ability to sit or stand in excess of 1 hour at any one time; limited to occasional stair climbing with a rail, occasional stooping, and occasional kneeling; no climbing ladders or working at heights; rare crawling or crouching; and mentally limited to unskilled work. (See AR 22).

After summarizing the medical evidence (see AR 23-26), and briefly summarizing Plaintiff's (and his father's) administrative hearing testimony (see AR 26)[3], the ALJ made the following assessment of Plaintiff's credibility: "However, the alleged severity of pain complaints is not fully collaborated by the overall medical evidence." (AR 26).[4] The ALJ then proceeded to discuss what evidence he found did

---

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3]    The ALJ wrote:

At the hearing hearing, the claimant and his father testified that he suffered from severe, debilitating pain, which impeded sleep and seriously restricted daily functioning (hearing testimony). The claimant reported that his pain symptoms impeded lifting and prolonged sitting and standing for more than 1 hour at a time. He also noted difficulty with above shoulder activity (hearing testimony).

[4]    The ALJ earlier had stated:

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying m e d i c a l l y determinable physical or mental impairment(s)-i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms. [¶] Second, once an underlying physical or mental

(continued...)

not fully corroborate Plaintiff's testimony. (See AR 26).[5] The ALJ then stated: "Based on a review of the overall record, the Administrative Law Judge gives the claimant's testimony some credence, and finds that the claimant warrants greater restrictions than those proposed by the consultative and State Agency physicians." (AR 26).  Soon thereafter, while discussing Plaintiff's RFC, the ALJ stated, "While the Administrative Law Judge finds no objective medical evidence to refute Dr. Hoang's opinion that the claimant could sit or stand and walk up to 6 hours in an 8 hour workday, the Administrative Law Judge gives some credence to the claimant's testimony of pain limitations with prolonged sitting and standing and finds that the claimant is unable to sit or stand more than 1 hour at a time without a change of position for at

---

[4] (...continued)
impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record. (AR 23).

By making a finding about Plaintiff's credibility, the ALJ apparently implicitly found that the first step had been satisfied.

[5]     The ALJ wrote:

Rather, Agreed Medical Examiner, Dr. Sanders, noted only an inability to perform past heavy work based on the claimant's orthopedic issues; Dr. Motzkin advised a limitation to essentially light lifting based on the claimant's hernia issues; and Dr. Hoang noted a capability for medium exertion from an orthopedic standpoint.  Moreover, within February 2011 and May 2011 assessments, a State Agency reviewing physician concurred with Dr. Hoang's medium restrictions, but found that the claimant was limited to occasional overhead reaching with the right upper extremity, occasional ladder, rope and scaffold climbing, frequent ramp/stair climbing, balancing, stooping, kneeling, crouching and crawling, and pulmonary restrictions.
(AR 26).

least 5 minutes." (AR 26). The ALJ's determination that Plaintiff was restricted to occasional stooping, kneeling, and stair climbing with a rail and precluded from climbing ladders or working at heights and restricted to crawling and crouching on a rare basis was based on Plaintiff's "multiple pain symptoms." (AR 26-27).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, – F.3d –, 2015 WL 462013 * 5 (August 5, 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence did not support the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[6]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater,

---

[6]    The Court will not consider reasons for finding Plaintiff not fully credible (see Joint Stip. at 25-27) that were not given by the ALJ in the Decision.   See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

*supra*, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").  While the ALJ gave Plaintiff's testimony concerning his abilities to sit and stand "some credence" (<u>see</u> AR 26), the ALJ failed to specify what testimony was not credible.  <u>Brown-Hunter</u>, 2015 WL 462013 *6 (ALJ committed legal error by failing to identify testimony found to be not credible and failing to link that testimony to the particular part of the record supporting the ALJ's noncredibility determination).

Second, the one and only reason given by the ALJ -- the lack of objective medical evidence for Plaintiff's limitations (<u>see</u> AR 26) -- cannot, by itself, support the credibility finding.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

**B.  Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.")  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate.  Because outstanding issues must be resolved

before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[7]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 20, 2015

/s/

ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[7]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (2014).    Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's determination that Plaintiff's mental impairment was nonsevere (<u>see</u> Joint Stip. at 5-12, 15) and the ALJ's assessment of Plaintiff's ability to perform the identified work (<u>see</u> Joint Stip. at 15-18, 22-23).  Because this matter is being remanded for further consideration, these issues should also be considered on remand, if necessary.